### MILLIARD F. INGELS *et al.* v. LEMUEL INGELS.

1. HOMESTEAD — *Necessity of Occupancy*. Where city lots are purchased for a homestead, in order to preserve a debtor's right to the homestead exemption he must actually occupy the same as a residence within a reasonable time after the purchase; and where a debtor fails to so occupy, and fails to make any preparation for occupancy for a period of two years and five months after such purchase, he cannot defeat the judgment lien of a creditor merely by showing that he has always intended to occupy said lots as a homestead. The constitution and the statute require actual occupancy in order to preserve a homestead right.

2. EXECUTION — *Occupancy After Levy*. Occupancy after levy of execution does not change the rights of the parties.

*Error from Atchison District Court.*

THE opinion herein, filed February 11, 1893, contains a sufficient statement of the nature of the action and the facts. June 22, 1889, judgment for plaintiff, *Lemuel Ingels*, against *Milliard F. Ingels* and another. The defendants bring the case to this court.

*W. D. Gilbert*, for plaintiffs in error:

In the case at bar, the time between the purchase and the occupancy of the house was between two and three years, the homestead claimant being during all that time engaged in the

honest and earnest endeavor to obtain the means to complete the building and occupy the premises as a home. "If anything was lacking to make the lot a homestead, it was because the poverty of plaintiffs in error had precluded their advancing the improvements as rapidly as they desired." They were proceeding as fast as they were able to improve it as their homestead, and build a dwelling, for which purpose they had a part of the material upon the premises, when the contract to bore for coal seemed to present a means by which they could hasten the time when they would have their home ready to move into, and temporarily they left it in order to get the money to complete it, expecting and intending to return to it, and did return and occupy it.

In *Reske v. Reske,* 51 Mich. 541, actual occupancy within three years was held to be within a reasonable time, when the claimant of the homestead was putting forth his efforts and labors to obtain the means to build the house to occupy the homestead. The case at bar is stronger than the Michigan case, *supra,* inasmuch as in the case at bar the money invested in the lots was the proceeds of the sale of the homestead which he before that time had owned. The law is well settled, that the proceeds of the sale of the homestead while held with the intention of investing in another homestead, and the new homestead after the investment is made, are alike out of the reach of the creditor—are property toward which the creditor need never turn his eye. See *Scofield v. Hopkins,* 61 Wis. 370; *Binzel v. Grogan,* 67 id. 147; *Bradshaw v. Hurst,* 57 Iowa, 745; *Morris v. Ward,* 5 Kas. 247; *Edwards v. Fry,* 9 id. 417; *Monroe v. May,* 9 id. 466; *Mitchell v. Milhoan,* 11 id. 617; *Gilworth v. Cody,* 21 id. 702.

*B. F. Hudson,* for defendant in error:

The court below held that the property was not the homestead of defendants in error when the levy was made. The said M. F. Ingels purchased the property in March, 1887, but never erected any buildings thereon until in September, 1889, two or three days before the sale, when he built thereon

a board shanty, costing not more than $10 or $15, so that he might claim the property as a homestead. He does not claim to have occupied it as a homestead until after the levy, which is too late to defeat the lien obtained by the levy. *Bullene v. Hiatt*, 12 Kas. 98.

There is no evidence that he bought it "with the intent of present, not simply of future, occupancy." *Swenson v. Kiehl*, 21 Kas. 534.

The plaintiffs in error assume that the case of *Reske v. Reske*, 51 Mich. 541, is conclusive. The facts in that case and the one at bar are entirely different. In that, the owner fenced the lot, built a barn and shed, dug a well, kept his horses on the lot, also his hogs and poultry, and carried on business on the lot from the first, at which his wife assisted, and each day, as he would make a little money, he would add to improvements, and he lived across the way from the lot. The defendants in error assume to give the language of the Michigan decision, but omit some portions to which we attach importance, and to which we invite the attention of the court.

"A homestead . . . occupied as a residence by the family, etc., is the language of both constitution and statute." *Edwards v. Fry*, 9 Kas. 425.

The plaintiffs in error also cite *Gilworth v. Cody*, 21 Kas. 702, as supporting their views, but it is no more applicable than *Reske v. Reske*, supra.

The opinion of the court was delivered by

ALLEN, J.: On the 22d day of June, 1889, defendant in error obtained a judgment in the district court of Atchison county, Kansas, against T. J. Ingels and M. F. Ingels, for the sum of $906.90 and costs of suit. On the 9th day of August, 1889, execution was issued on said judgment to the sheriff of Atchison county. On the 19th of August, 1889, said sheriff levied the same on lot 11, and the west 40 feet of lot 12, block 11, in that part of the city of Atchison commonly known as "West Atchison." The sheriff duly adver-

tised this property for sale, and on the 26th day of September, 1889, sold the same to the plaintiff below for the sum of $157. Motions were thereafter filed, both to confirm and set aside said sale. These motions were heard at the same time. The motion to set aside the sale was overruled, and the motion to confirm was sustained. The defendants below excepted to the ruling of the court on these motions, and bring the case here for review.

Two points are urged by counsel for the plaintiffs in error. One is, that the appraisement is defective, because the appraisement fails to state that the appraisers made an estimate of the real value of the property. The appraisement does state that the appraisers, being first duly sworn impartially to appraise the said property upon actual view, had truly and impartially appraised said property, and that the particular property in controversy was appraised at $150. We think this a substantial compliance with the statute. It is not necessary that the precise language of the statute be used in the report of the appraisers. We think that the appraisement in this case fairly shows that the property was appraised at what the appraisers deemed its real value. This is a substantial compliance with the requirements of the statute.

The principal question presented for our consideration is, whether or not this property was a homestead, and therefore exempt from levy and sale. The facts with reference to the matter, as appears from the record, are as follows: The plaintiffs in error formerly owned and occupied a homestead in west Atchison, which they sold in the year 1887, expecting and intending at the time to reinvest the proceeds in another homestead. Soon thereafter they invested a part of the proceeds of this sale in the property in controversy, for the purpose and with the intention of making it their permanent homestead. At the time of the purchase, there was no house or other building thereon, and the same was not inclosed. They inclosed the lots with a fence, and, as fast as they were able, proceeded to and had hauled on said lots materials, stone, lumber, etc., with which to build a dwelling

house and building to occupy as a homestead. Milliard F.
Ingels then took a contract at Valley Falls to bore for coal,
and temporarily moved to Valley Falls to be near his work,
and intending to return to his homestead, complete his dwel-
ling house, and occupy the same as his permanent homestead.
While he was still engaged on his contract at Valley Falls,
and before he had completed the same, on the 19th day of
August, 1889, the sheriff levied said execution on said prop-
erty, and sold the same as before stated. The plaintiffs in
error have no other homestead, and no other real estate of
which to make a homestead. After the levy, the defendants
below built a house on said lots, which they occupied at the
time of the sale. The defendants never occupied the premises
in question, from the time they were purchased by the defend-
ants, in March, 1887, till after the making of the levy thereon;
and at the time said judgment was rendered, and at the time
the levy was made, the said premises were vacant and unoccu-
pied, excepting that they were inclosed by an old fence. The
facts in this case are to be gathered from the affidavit made
by both plaintiffs in error, and also from an agreed statement
of the facts made by both parties and included in the record.
The statements with reference to the placing of building ma-
terials on the lots are contained in the affidavit. From the
agreed statement, it appears that the defendants never occu-
pied the premises in question, from the time they purchased
them to the time of the levy, and that at the time the judg-
ment was rendered and at the time of the levy the premises
were vacant and unoccupied, except that they were inclosed
by an old fence. We can only harmonize the facts gathered
from the affidavit with those contained in the agreed state-
ment of facts by concluding that whatever building materials
had been placed on the lots were removed therefrom before
the levy was made. It clearly appears from the whole record
that the premises were never in fact occupied by the defend-
ants as a homestead, and also that, at the time the judgment
was rendered and the levy made, the lots were vacant and un-
occupied.

The question is now presented for our consideration as to whether the purchase of this property for a homestead, and the intention in the minds of these parties to make it a homestead in the future, is sufficient to supply the requirement of occupancy contained in the constitution. Section 9 of article 15 of the constitution reads as follows:

"SEC. 9. A homestead to the extent of 160 acres of farming land, or of one acre within the limits of an incorporated town or city, occupied as a residence by the family of the owner, together with all the improvements on the same, shall be exempted from forced sale, under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists; but no property shall be exempt from sale for taxes, or for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon: *Provided,* The provisions of this section shall not apply to any process of law obtained by virtue of a lien given by the consent of both husband and wife."

This section of the constitution has been considered and construed by this court in numerous cases. In the case of *Edwards v. Fry,* 9 Kas. 417, 425, Mr. Justice BREWER, speaking for the court, used the following language:

"We know the spirit which animates the people of Kansas, the makers of our constitution and laws, on this homestead question. We note the care with which they have sought to preserve the homestead inviolate to the family. We have no disposition to weaken or whittle away any of the beneficent constitutional or statutory provisions on the subject. We know that the purchase of a homestead, and the removal on to it, cannot be made momentarily contemporaneous. It takes time for a party in possession to move out, and then more time for the purchaser to move in. Repairs may have to be made, or buildings partially or wholly erected. Now, the law does not wait till all this has been done, and the purchaser actually settled in his new home, before attaching to it the inviolability of a homestead. A purchase of a homestead with a view to occupancy, followed by occupancy within a reasonable time, may secure *ab initio* a homestead inviolability. Yet occupation is nevertheless an essential element to secure this inviolability."

Again, in the case of *Monroe v. May*, 9 Kas. 466, it was held:

"A purchase of a homestead with a view to occupancy, followed by occupancy within a reasonable time, receives from the time of purchase a homestead exemption from seizure upon execution or attachment."

The facts in that case, with reference to the occupancy, are briefly these: Monroe, the judgment debtor, owned a farm, which he sold in November, 1870, receiving in exchange a house and lot in Atchison, and $1,600 in notes. Possession, by agreement, was to be exchanged on the 1st of March following. The exchange was so made, and this city property was occupied and claimed by Monroe and wife as their homestead. The court in that case came to the conclusion that the Monroes became actual occupants of this property within a reasonable time after its purchase, and that it was exempt to them as a homestead. The time intervening between the purchase and taking possession was four months or less.

Again, in the case of *Gilworth v. Cody*, 21 Kas. 702, 705, it appeared that Cody, on December 1, 1877, purchased 80 acres of land for the purpose of present use as a residence. The land was vacant at the date of the purchase. Cody commenced at once to dig a cellar and haul stone for a dwelling house. On December 5, he started to a neighboring town to purchase materials out of which to erect a dwelling house. He made such purchase, and returned with the materials on December 7. He unloaded the materials adjoining the premises on the same day the premises were levied on under the order of attachment. Cody continued the construction of his dwelling house, and completed the same December 28, 1877, and moved at once with his family into the dwelling, and occupied it as the residence of himself and family. Chief Justice HORTON, in delivering the opinion of the court, used the following language, after having reviewed the authorities on the subject:

"These decisions clearly establish the doctrine that our homestead laws, beneficial in their operation and founded in

a wise policy, should be liberally construed so as to carry out
their spirit.   Considered in this light, in this case there was
such an actual purpose and intention of present occupancy,
accompanied with such acts on the part of the defendant in
error in the commencement and completion of his dwelling,
together with his residence therein with his family, that this
might reasonably be held to amount in substance to actual
occupancy at the date of the levy.   While therefore we hold,
within the terms of the law, that occupation is an essential
element to secure a homestead inviolability, under the excep-
tional circumstances which appear from the findings of the
court, the intentions and acts of the purchaser of the land in
controversy may be construed into a legal equivalent of actual
occupancy of such premises.   Law is entitled to and can com-
mand respect only when it is reasonable and adapted to the
ordinary conduct of human affairs, and the construction we
have given above to the provisions securing homestead ex-
emptions is certainly within their spirit, and more in conso-
nance with a reasonable interpretation thereof, than if we
adopted the opposite conclusion."

Counsel for the plaintiffs in error calls our attention to the
case of *Reske v. Reske*, 51 Mich. 541.   The opinion in that
case was delivered by Justice Cooley, and carries the doctrine
of constructive occupancy for a homestead to the furthest
limit yet reached by any court, so far as we have been able to
review the authorities.   It appeared in that case that the de-
fendant purchased the lot in controversy in Detroit in Janu-
ary, 1880.   He was a single man at the time of the purchase,
but soon thereafter married.   He then fenced the lot and
commenced making use of it.   He built a barn and shed,
dug a well, kept his horses, his hogs, and his poultry, and
also piled wood which he kept for sale, on the lot.   At first
he lived at some considerable distance, but afterwards took
board across the way, and remained there while building.   In
the spring of 1881 he obtained figures from a builder on the
cost of a house, but not being able to go on, he did not then
build.   It was towards the end of 1882 before he was able
to put up a house, and he and his family were not living in
it till 1883.   In November, 1882, judgment was taken against
the defendant and execution levied on the lot.   The court in

that case comments on the fact that the defendant was all the time in the actual occupancy of the lot, and was from time to time doing various acts tending towards the construction of such buildings and conveniences as were required in order to make it a home. The period of time intervening between the purchase of the lot and the levy of the execution was a few months longer than in this case. It will be noted, however, that in this case it is expressly admitted that there was not at any time actual occupancy of the premises by the defendants from the time of the purchase till the date of the levy. In that case the defendant testified, and the court quotes from his testimony the following language: "I built every day as soon as I got a little money ahead." The court evidently took the view of the case that the defendant's delay in the construction of his dwelling house was due solely to his poverty, and that he was all the time making a determined effort to actually fit the premises for occupation by himself and family. He not merely had the purpose in his mind to make the lot his homestead, but was actually at work from time to time on the lot preparing it for a home.

In the case of *Swenson v. Kiehl*, 21 Kas. 533, the syllabus of the case is as follows:

"(1) Occupation, actual or constructive, is essential to give the character of homestead to premises. (2) While occupation need not always be instantaneously contemporaneous with purchase, to create a homestead, yet the purchase must always be with the intent of present, and not simply of future, occupancy."

In that case the land was purchased by the execution debtor on November 13, 1876. The judgment on which the execution was issued was rendered in 1873. One execution was issued February 5, 1877, and another February 23, 1877. The sale was made under the latter execution. There was a house on the land, but the defendant failed to occupy it as a residence for more than a year after the purchase; and in that case Mr. Justice BREWER, in the opinion, says:

"'Occupied as a residence by the family of the owner' is the language of the constitution defining a homestead exemp-

tion.   We are aware that occupancy is not always possible at the instant of purchase, and that, as we have heretofore said, a reasonable time is allowable in which to prepare for and to complete the removal and occupation of the intended homestead; but the purchase must be for the purpose and with the intent of present, and not simply of future, use as a residence."

In the case of *Farlin v. Sook*, 26 Kas. 398, it was held:

"Under the homestead-exemption laws, no person can hold property exempt from execution or forced sale, unless the property is 'occupied as a residence by the family of the owner.'   Therefore, where the owner of the property resides upon the same, but his family, consisting of a wife and children, have never been in Kansas, but reside in Illinois, and it is not and never has been the intention of the owner to bring them to Kansas, or to have them reside upon the property, *held*, that the owner cannot hold the property exempt from execution and forced sale under the homestead-exemption laws."

In the case of *Koons v. Rittenhause*, 28 Kas. 359, it appeared that a husband and wife resided in New York in 1871. The husband, desiring to change his place of residence, came to Kansas and purchased real estate, and resided thereon for about four years, then sold the same, and executed a deed therefor, representing himself to be a single man.   About a year afterward the wife came to Kansas, and thereafter resided upon the land with her husband, and it had been at all times the intention of the husband and wife that she should at some time come to Kansas, and reside upon the land with him.   It was held that the land had never been occupied as a residence by the family of the owner in accordance with the exemption law, and that the deed from the husband alone was therefore not void.   Again, in the case of *Bradford v. Loan & Trust Co.*, 47 Kas. 587, in concluding the opinion Chief Justice HORTON says: "Under the constitution, there must be occupancy as a residence by some one of the family of the owner to constitute a homestead."

We do not think there is any real conflict in the authorities cited, nor do we think that the Michigan case goes to the limit which the plaintiffs in error ask us to reach in this case.

Whatever our views might be as to the propriety of allowing a debtor to hold a tract of land for a homestead, whether occupied or not, we are bound to declare the law as we find it; and, while this court in the cases cited has given the constitutional provision a liberal construction, for the purpose of fully securing to needy debtors the beneficent exemption secured to them by the constitution, yet we may not wholly dispense with the requirement of occupancy. Can it be said that these lots, though vacant and wholly unoccupied for a period of more than two years, were in the constructive occupancy of the defendants because they were purchased with the proceeds of a former homestead, and the defendants intended, as soon as they should be able to build thereon, to occupy them? If we hold these lots to have been a homestead during all this time, by what course of reasoning can we ever fix a limit within which actual occupancy must take place? The admission contained in the record, that the defendants never occupied the lots or premises in question herein from the time they were purchased by the defendants, in March, 1887, up to the time subsequent to the making of the levy herein, (which was on August 19, 1889,) and that, at the time of the levy, the premises were vacant and unoccupied, seems to us to be decisive of this case; and that the defendants have admitted that occupancy by the family of the defendants did not exist, and therefore the defendants cannot claim the premises exempt to them as a homestead. The fact that the defendants took possession of the lots and constructed a house thereon after the levy of the execution cannot of itself defeat the lien of the judgment. (*Bullene v. Hiatt*, 12 Kas. 98.) The rights of the parties were fixed at the time of the levy, and no subsequent act of the debtor could change them.

We find no error in the rulings of the district court, and its orders will be affirmed.

All the Justices concurring.