G. D. Osburn, and Rufus Cone, as *Sheriff of Sedgwick County, Kansas*, v. Flora Magee and J. H. Magee.

### No. 402.

Homestead and Exemption — *Occupancy by Tenant.* In March, 1890, the defendants in error, intending to acquire a homestead, purchased a tract of land occupied by a tenant of their grantor under a lease expiring March 1, 1891, and before the end of the tenant's term voluntarily extended the same until after the wheat harvest of 1891, and also procured an extension of the term of the lease under which they were occupying another tract until the fall of 1891, where they remained until October 20 of that year, when they moved on the land claimed as a homestead, but not until six days after it had been levied on under an execution. The removal was hastily made, without preparation of the premises for occupancy, and on the next day after a consultation with an attorney concerning their homestead rights. *Held*, that the land was not invested with the homestead character and was subject to levy under the execution.

Error from Sedgwick district court; C. REED, judge. Opinion filed June 20, 1899.   Reversed.

*Amidon & Conly*, for plaintiffs in error.
*Rohrbaugh & Rauch*, for defendants in error.

The opinion of the court was delivered by

. MILTON, J.:  In this action a permanent injunction was granted restraining the plaintiffs in error Rufus Cone, as sheriff of Sedgwick county, and G. D. Osburn, the execution creditor, from selling and causing to be sold a certain tract of land which had been levied on under an execution issued against the defendants in error, and which land the court found to be the homestead of the latter.   On March 15, 1890, and while the defendants in error were residing on certain premises near the corporate limits of the city of Wichita, as tenants under a one-year lease commencing about March 1, 1890, Mrs. Magee, acting through her husband as her agent, purchased eighty acres of land in Sedgwick county, and paid for the same out of funds then recently received from her deceased father's estate.   They had removed from their former homestead, a quarter-section in Sedgwick county, which they had previously encumbered with two mortgages, the first to the Farmers' Loan and Trust Company and the second to G. D. Osburn.   At the dates named the mortgages were in process of foreclosure in a single foreclosure action, and on October 14, 1890, judgment was entered in favor of the mortgagees.   Afterward the mortgaged land was sold under an order of sale issued in said action, the proceeds of the sale being sufficient to satisfy the first mortgage only.   The amount due Osburn at that time was $1050, no part

of which was paid at the time of the commencement of the present action.

The testimony on behalf of the plaintiffs below tended to prove that at the time Mrs. Magee purchased the eighty-acre tract she and her husband intended to occupy the same as a homestead as soon as possession could be obtained from the tenant of their grantor, the tenancy being for one year from March 1, 1890. They were aware of the existence of the tenancy before making the purchase, and directly after the purchase Mr. Magee tried without success to obtain from the tenant a surrender of the possession. It was then agreed that the tenant should occupy the land until the end of his term, the rent to be paid to the defendants in error. In the fall of 1890 the tenant sowed wheat on the land with the consent of the defendants in error, who also consented that the tenant might remain on the farm until after the wheat harvest of 1891. Thereafter the defendants in error leased the premises they were themselves occupying for a further term, extending until some time in the fall of 1891. In August, 1891, the tenant quit the premises, and the defendants in error caused part of the same to be plowed preparatory to sowing wheat thereon. They testified that they could not leave the premises they were occupying until after they had taken care of the apple crop grown there in the season of 1891. They actually removed to the premises claimed as a homestead on October 20, 1891, six days after the levy had been made under the execution in favor of Osburn. The removal was hastily made and without any preparation therefor. The house on the land contained only two rooms and in one of them wheat was stored. On the preceding day, Magee, learning of the levy, had consulted an attorney regarding the matter.

Some time prior to the levy of the execution, Magee had gone to Oklahoma with the expectation of locating on public land, but he abandoned the idea and returned. This action was commenced by Mrs. Magee, and afterward she was permitted to amend her petition by joining her husband as coplaintiff. They had no other real property.

Do the foregoing facts sustain the finding of the trial court that the land in controversy was the homestead of the defendants in error at the date of the levy? In *Monroe v. May, Weil & Co.*, 9 Kan. 466, one paragraph of the syllabus reads :

"A purchase of a homestead with a view to occupancy, followed by occupancy within a reasonable time, receives from the time of purchase a homestead exemption from seizure upon execution or judgment."

In the case of *Swenson v. Kiehl*, 21 Kan. 533, it appears that the land was purchased by the execution debtor on November 13, 1876, the judgment on which the execution was based was rendered in 1873, and the property was levied on and sold under an execution on that judgment, issued in April, 1877. There was a house on the land, but the defendant had failed to occupy it as a residence up to the time of the trial. In the opinion the court said :

" ' Occupied as a residence by the family of the owner,' is the language of the constitution defining the homestead exemption. We are aware that occupancy is not always possible at the instant of purchase, and that, as we have heretofore said, a reasonable time is allowed in which to prepare for and to complete the removal and occupation of the intended homestead ; but the purchase must be for the purpose and with the intent of present, and not simply of future, use as a residence. A party may not have two homesteads. If he occupies one dwelling as a residence, and intends to continue such occupation for

the present, a purchase of another residence does not invest that with the character of a homestead simply because of an intent, at some future and more convenient time to make it his home.    And this is true whether the present residence is owned or leased.''

The syllabus of the case reads :

'' (1)  Occupation, actual or constructive, is essential to give the homestead character to premises.    (2) While occupation need not always be instantaneously contemporaneous with purchase, to create a homestead, yet the purchase must always be with the intent of present, and not simply of future, occupancy.''

In the case of *Ingels v. Ingels*, 50 Kan. 755, 32 Pac. 387, the supreme court reviewed practically all of the decisions of that court in which the homestead provision of the constitution had been considered.    In the opinion the court said :

'' Whatever our views might be as to the propriety of allowing a debtor to hold a tract of land for a homestead, whether occupied or not, we are bound to declare the law as we find it ; and while this court in the cases cited has given the constitutional provision a liberal construction, for the purpose of fully securing to needy debtors the beneficent extension secured to them by the constitution, yet we may not wholly dispense with the requirement of occupancy.''

The first paragraph of the syllabus reads :

''Where city lots are purchased for a homestead, in order to preserve a debtor's right to the homestead exemption, he must actually occupy the same as a residence within a reasonable time after the purchase ; and where a debtor fails to so occupy, and fails to make any preparation for occupancy for a period of two years and five months after such purchase, he cannot defeat the judgment lien of a creditor merely by showing that he has always intended to occupy said lots as a homestead.    The constitution and the statute require actual occupancy in order to preserve a homestead right.''

Referring now to the facts hereinbefore stated, it will be seen that at the time Mrs. Magee purchased the tract of land she and her husband intended to occupy the same as a homestead at some future time. They were aware of the existing tenancy and the purchase was completed before any effort was made to terminate such tenancy. It is possible that, within the principle of the decision by the supreme court of this state in the case of *Upton v. Coxen*, 60 Kan. 1, 55 Pac. 284, the tenancy existing at the date of the purchase of the land might be regarded as a temporary obstacle preventing immediate occupancy by the defendants in error, and that the latter might have acquired a homestead right in the land notwithstanding the fact of such tenancy, but it is doubtful if the decision goes to that extent. Assuming, however, that it does, there is not in the record anything to excuse the conduct of the defendants in error in extending the term of the tenancy from March 1 to some indefinite date "after harvest." It is unreasonable to say that their voluntary extension of the terms of the tenancies as to the premises they themselves were occupying and as to the land in controversy was consistent with an intent of present occupancy by themselves of the latter tract as a homestead. The defendants in error showed affirmatively by their own acts that whatever intention of present occupancy they entertained when the land was purchased had been abandoned.

The execution to enforce the judgment having been levied after the abandonment of the intention of occupancy and before actual occupancy of the land by the defendants in error, a homestead right therein did not exist at the date of the levy, and was not acquired by occupancy after the levy. (*Bullene v.*

*Hiatt*, 12 Kan. 98; *Ingels v. Ingels*, 50 id. 755, 32 Pac. 387.) The trial court erred in declaring the tract in controversy to be a homestead and exempt from levy and sale under the execution. The judgment will be reversed, and the cause remanded for a new trial.

SCHOONOVER, J., concurring.
DENNISON, P. J., dissenting.