A. C. FOOGMAN vs. DANIEL PATTERSON, et al.

Opinion filed May 10, 1900.

**Homestead—Selection—Extent and Value.**

Where the head of a family owns a section of land, and his dwelling house stands upon one governmental quarter section thereof, he may select his homestead from any portion of such section that may best suit his convenience and interests, with the limitations that such selection must include the dwelling house and appurtenances, and must not exceed 160 acres in extent or $5,000 in value.

**Levy—Homestead Claim—Presumption from Failure to Assert.**

But where no homestead has been selected or homestead declaration filed for record as provided by law, either by the head of the family

or his wife, and where upon the levy of execution upon the whole section under a judgment against the owner thereof no claim of exemption is made either by the owner or any member of his family, no presumption of law arises that the debtor claims as his homstead the particular governmental quarter section upon which his dwelling house stands.

## Waiver of Homestead Right.

Under such circumstances the debtor, or some one authorized by law to make the claim for him, must claim some specific portion of the section as his homestead, or the homestead right will be waived, and a sale under the execution will pass the debtor's title.

## Estoppel by Laches.

Where a judgment creditor of the grantors, with an execution levied upon the land, brings an action in aid of such execution against the grantors and the grantee, claiming that the conveyance was fraudulent as to creditors, and asking that it be set aside and the judgment declared a lien upon the land, and where the defense of homestead, if it existed, was available to either and all of such defendants, and must have defeated a recovery by the plaintiff, but no such defense was interposed, and the relief asked was decreed, the fraudulent grantee cannot, in a subsequent action between himself and the assignee of the purchaser at an execution sale of the land on the judgment, but made after the entry of the decree, defeat such sale by setting up the homestead defense, of which he failed to avail himself in the first instance.

Appeal from District Court, Traill County; *Pollock,* J.

Action by A. C. Foogman against Daniel Patterson and Stener G. Wenaas, sheriff. Judgment for plaintiff, and defendants appeal. Affirmed.

*F. B. Lambert* and *P. G. Swenson,* for appellant.

The judgments of John E. Paulson, et al were not at any time liens on the land in suit, which was used and occupied by G. A. Ward as his homestead. § § 4326, 5104, 5126 and 5127, Comp. Laws; § § 4678, 5490, 5516, 5517 and 3605, Rev. Codes. The fraudulent conveyance from the Wards to Patterson did not enlarge the rights of the judgment creditors, nor did it give them a right to enforce their judgments out of any property which was exempt before such conveyance was made. *Munson* v. *Carter,* 58 N. W. Rep. 931; *Beyer* v. *Thoeming,* 46 N. W. Rep. 1074; *Bloedorn* v. *Jewell,* 52 N. W. Rep. 367; *Shawano County Bank* v. *Koeppen,* 47 N. W. Rep. 723; *Horton* v. *Kelley,* 41 N. W. Rep. 1031. The claim of the creditors is not under or through the fraudulent conveyance but adverse to it, and when at their suit it has been set aside and declared void they cannot be allowed as creditors to set up the void conveyance against which they are claiming for the purpose of enlarging their rights or remedies against the debtor, or for the purpose of estopping him from the assertion of the rights which he would otherwise have as against them. *Sears* v. *Hawks,* 14 Ohio St. 298; Wait on Fraud. Conv. § 46. The fraud does not consist in conveying the homestead, but in conveying the other land that the

creditors can reach by execution. Thomp. on Hd. § 411; *Smith* v. *Runsey*, 33 Mich. 191; *Pike* v. *Miles*, 21 Wis. 168; *Kvello* v. *Taylor*, 5 N. D. 76; *Horton* v. *Kelley*, 41 N. W. Rep. 1031. The recital in the judgments setting aside the fraudulent convenances that the judgments are liens on all the lands cannot have the effect to create a lien on the homestead. The lien of a judgment is in fact no part or portion of it, but only an effect or incident of the judgment, and is entirely the creation of statute. *Nygren* v. *Nygren*, 60 N. W. Rep. 885; *City of St. Louis* v. *Canty*, 65 Ill. App. 325; *Capelle* v. *Baker*, 3 Munt. (Del.) 344. In the actions against Ward, *et al*, the question as to whether any of said land was the homestead of Ward was not litigated nor in issue. Any recital in the judgment, in so far as it attempts to affect the homestead exemption, can be of no force or effect. *Gille* v. *Emmons*, 58 Kan. 116; *Reynolds* v. *Stockton*, 43 N. J. Eq. 211; *Metcalf* v. *Hart*, 3 Wyo. 513. A party cannot, in this indirect manner, overrule the express provision of the statute that a judgment shall not be a lien on the homestead. *Peerson* v. *Truax*, 25 Pac. Rep. 183. No estoppel can arise from the judgments in the Paulson case and Daisy Roller Mills case, because the homestead question was not at issue and was not litigated in any of these actions. *Fahey* v. *Esterley Mch. Co.*, 3 N. D. 220; *Sobolisk* v. *Jacobson*, 6 N. D. 175; *Cromwell* v. *County*, 94 U. S. 351; *Wyman* v. *Hallock*, 57 N. W. Rep. 197, 4 S. D. 469; *Quigley* v. *McEvony*, 59 N. W. Rep. 767; *Johnson* v. *Bartek*, 76 N. W. Rep. 878; *Phillips* v. *Root*, 31 N. W. Rep. 718; *Noyes* v. *Belding*, 62 N. W. Rep. 953, 6 S. D. 629. No estoppel arises because Patterson as assignee of the Paulson judgments levied on and attempted to sell the homestead, because none of the elements of an estoppel are proven to have been present. Bigelow on Estop. 570; *Parleman* v. *Young*, 2 Dak. 175; *Martin* v. *Zellerbach*, 38 Cal. 300; *Davis* v. *Davis*, 26 Cal. 23; *Smith* v. *Sprague*, 77 N. W. Rep. 689; *Guychard* v. *Brande*, 15 N. W. Rep. 764; *Betts* v. *Sims*, 41 N. W. Rep. 117; *First Nat. Bank* v. *Maxwell*, 123 Cal. 360; *Delany* v. *Cunning*, 52 Wis. 266; *Jamieson* v. *Miller*, 20 N. W. Rep. 491; *Blodgett* v. *Perry*, 97 Mo. 263; *New York Rubber Co.* v. *Rothery*, 107 N. Y. 310; *Marble Co.* v. *Duffy*, 27 N. E. Rep. 430. When everything is equally known to both parties, although they were mistaken as to their legal rights, no estoppel arises. *Estes* v. *Jackson*, 111 N. C. 145; *Smith* v. *Sprague*, 77 N. W. Rep. 689; *Brothers* v. *Bank*, 84 Wis. 381. No estoppel can arise from a levy and sale on execution as against the execution creditor when he makes no representations or inducement at the time of the sale. *Martin* v. *Zellerbach*, 38 Cal. 300. The Paulson judgment was not a lien on the homestead; therefore, the attempt to sell the same under said judgment was void. *Bauman* v. *France*, 56 N. W. Rep. 395; *Kendall* v. *Clarke*, 10 Cal. 17. There is no issue of estoppel under the pleadings to be available for plaintiff. The estoppel relied upon should have been plead. *Davis* v. *Davis*, 26 Cal. 23; *McKeen* v.

*Naughton,* 26 Pac. Rep. 354; *Gooding* v. *Underwood,* 50 N. W. Rep. 618; *Pearson* v. *Harding,* 64 N. W. Rep. 904; *School District* v. *Bank,* 27 N. W. Rep. 255; *Engleston* v. *Mason,* 51 N. W. Rep. 1; *Golden* v. *Hardesty,* 61 N. W. Rep. 913; *Devotie* v. *McGerr,* 15 Colo. 467; *Nebraska Co.* v. *Blust,* 60 N. W. Rep. 1016; *Hammerslough* v. *Cheathan,* 84 Mo. 21; *Dwellinghouse Ins. Co.* v. *Johnson,* 47 Kan. 5; *Fanning* v. *Ins. Co.,* 37 Ohio St. 346; *Kidder* v. *Aaron,* 72 N. W. Rep. 893.

*Carmody & Leslie,* for respondent.

Patterson cannot now set up Ward's former homestead right as a defense, because he not only failed to object to the sale and its confirmation, but ordered the sale and purchased the land at the sale, and then when it was redeemed accepted the money. *Traders' Nat. Bank* v. *Schorr,* 54 Pac. Rep. 543; *Snapp* v. *Snapp,* 9 S. W. Rep. 705. After a debtor has made a fraudulent conceyance of land to cheat his creditors, and they have brought suit to set it aside for fraud, he may yet claim homestead therein in the same proceedings, but it is too late to claim after neglecting to do so in such proceeding. Waples on Hd. 531 and 532; *Norris* v. *Kidd,* 28 Ark. 406; *Fritz* v. *Fritz,* 32 Ark. 327; *Larson* v. *Reynolds,* 13 Ia. 57; *Haynes* v. *Meak,* 14 Ia. 320; *Tablock* v. *Eccles,* 20 Tex. 783. If the recital in the judgments against Ward that the same were liens upon this land, expressly describing the quarter, was erroneous, they should have been corrected in those cases, and not being so corrected are now binding. *Paulson* v. *Nichols & Sheppard Co.,* 8 N. D. 606, 80 N. W. Rep. 765; *Ingwaldson* v. *Skrivseth,* 8 N. D. 544, 80 N. W. Rep. 475.

BARTHOLOMEW, C. J. On and prior to December 20, 1888, one G. A. Ward was the owner of section 9, township 145, range 49, Traill county, N. D. His wife, Jessie S. Ward, owned the south half of section 10, same township; and one H. H. Hall, a son of Mrs. Ward by a former marriage, owned a half section adjoining, or in the immediate vicinity. The Wards resided on the southwest quarter of said section 9. Upon said section 9 there were at that time three interest-bearing mortgages, belonging to one Mrs. French, and which may be known as the "French mortgages." The Wards and Hall had become indebted to the firm of Paulson & Co., doing business in said county; and Paulson & Co. had obtained two small judgments against G. A. Ward, and had brought another action against the three parties to recover some $1,700. Other unsecured creditors were pressing the Wards and Hall. On said December 20, 1888, the Wards and Hall, by warranty deeds, transferred all their land to the defendant Daniel Patterson. These deeds were at once placed of record. They were in fact given as security; a defeasance being executed by Patterson at the same time, but not placed of record. Subsequently Paulson & Co. pro-

cured judgment upon their third claim. They issued execution upon all their said judgments, which were returned *nulla bona,* and afterwards alias executions were issued and levied upon all the lands above mentioned. Paulson & Co. then brought an action in aid of their said executions, and against the Wards and Hall and Patterson, asking to have said deeds set aside and declared void as to the said claims of Paulson & Co., and said judgments declared liens upon said land. The plaintiffs in that action were successful, and obtained a decree adjudging the right of Patterson in the land to be junior and inferior to the rights under the Paulson judgments, and declaring said judgments to be liens upon all of said lands. No claim of homestead was made or mentioned in that case. That decree was affirmed in this court. *Paulson* v. *Ward,* 4 N. D. 100, 58 N. W. Rep. 792. The date of this affirmance was March 19, 1894. In the meantime other creditors of the Wards and Hall, whose claims existed at the time of the execution of the deeds to Patterson, had obtained judgments on their claims; and, pursuing the same course that had been pursued by Paulson & Co., they brought an action against the same parties, asking to have the deeds declared void as to them, and their judgments declared liens upon the land. No claim or defense of homestead was made in that case. These plaintiffs were also successful, and their decree was affirmed in this court on January 8, 1897. See *Daisy Roller Mills* v. *Ward,* 6 N. D. 317, 70 N. W. Rep. 271. Soon after the remittitur was sent down in the case of *Paulson* v. *Ward,* and on May 25, 1894, Patterson purchased the Paulson judgments, and had them assigned to one Cameron. Subsequently other executions were issued upon these judgments, and all of the lands covered by the deeds were sold under said executions; Patterson being the purchaser in each instance. The northeast quarter of section 9 was sold separately. The remainder of the section, including the tract now alleged to be a homestead, was sold for a lump sum. Only a small portion of the judgments were satisfied from the sale of section 9, probably by reason of the existence of the French mortgages thereon. The greater part of the judgments were satisfied from the lands of Mrs. Ward and Hall. The sales of their lands were made on March 7 and April 28, 1896. Within the year for redemption the other creditors of the Wards and Hall, who had established their judgments as liens upon said lands senior to any claim of Patterson under his deeds, in the order of their priority, redeemed from the execution sales to Patterson. The present plaintiff, Foogman, was the owner by assignment of the junior judgment. He paid the sum of $11,707 to redeem, and received the sheriff's certificate issued to Patterson, and on May 21, 1897, he received the sheriff's deed upon the certificate. In February, 1898, Mrs. French began foreclosure proceedings upon one of her mortgages on said section 9. Patterson purchased the rights of Mrs. French under the mortgage, and obtained a decree of foreclosure and order of sale. Patterson also purchased and had assigned to him the

other two French mortgages. To prevent a sale of the land, Foogman undertook to purchase all of the French mortgages, and to obtain assignments thereof. Patterson refused to assign the mortgages, whereupon Foogman paid the amount then due upon all of said mortgages, being something over $10,000, and Patterson at once satisfied of record the two mortgages that had not been foreclosed. Soon after the final decision in *Paulson* v. *Ward,* Patterson began an action against the Wards and Hall only, asking to have his deeds, absolute on their face, declared mortgages and foreclosed as such. In said action such proceedings were had that on April 26, 1897, Patterson obtained a judgment against said parties for some $31,000, and a decree of foreclosure as against all of said land. Subsequently, and after the sheriff's deed had been issued to Foogman as stated, and after Foogman had paid the French mortgages, and after the same had been satisfied as stated, Patterson caused a special execution to issue under his said decree of foreclosure, and placed the same in the hands of his co-defendant, Wenaas, as sheriff of Traill county, and caused the same to be levied upon the southwest quarter of said section 9, and the same was by said sheriff duly advertised for sale under and pursuant to said decree. Foogman, as owner of the land, brought this action to permanently enjoin the sale. The plaintiff was successful, and Patterson appeals.

The position of the defendant is that the southwest quarter of said section 9 was the homestead of the Wards, and that, as such, the judgments obtained against the Wards were no liens upon that tract; that the law so declared; and that no decree could make the judgments liens against the homestead, as it was expressly exempt from all forced sale upon execution. Therefore the sale to Patterson under the Paulson judgments passed nothing whatever, and plaintiff received no title under the sheriff's deed, and the title still remains in G. A. Ward, and, the French mortgages being satisfied, the entire estate in the tract, legal and equitable, is subject to sale under Patterson's foreclosure decree against the Wards. The defendant brought into court, and tendered for the use of plaintiff, the amount received by him upon the redemption from his sale of so much of said section 9 as was sold in a lump with said southwest quarter; the amount being $191. This contention requires an examination of our homestead law. Section 3605, Rev. Codes, declares: "The homestead of every head of a family residing in this state, not exceeding in value five thousand dollars, and if within a town plat, not exceeding two acres in extent, and if not within a town plat, not exceeding in the aggregate more than one hundred and sixty acres, and consisting of a dwelling house in which the homestead claimant resides and all its appurtenances and the land on which the same is situated shall be exempt from judgment lien and from execution or forced sale except as provided in this chapter." The next section shows from what property the homestead may be taken. It reads: "If the homestead claimant is married the home-

stead may be selected from the separate property of the husband or, with the consent of the wife, from her separate property. When the homestead claimant is not married, but is the head of a family within the meaning of section 3625, the homestead may be selected from any of his or her property; provided, that the homestead so selected must in no case embrace different lots or tracts of land unless they are contiguous." Turning to section 3621, we have the manner of this selection: In order to select a homestead the husband or other head of the family, or in case the husband has not made such selection, the wife must execute and acknowledge in the same manner as a grant of real property is acknowledged a declaration of homestead and file the same for record." And section 3622 reads: "The declaration of homestead must contain: (1) A statement showing that the person making it is the head of a family; or when the declaration is made by the wife, showing that her husband has not made such declaration for their joint benefit. (2) A statement that the person making it is residing on the premises and claims them as a homestead. (3) A description of the premises. (4) An estimate of their cash value." The following section requires the declaration to be recorded in the office of the register of deeds of the proper county. We notice that this homestead may be selected from any real estate belonging to the head of the family, with the restrictions that it must include the dwelling house and appurtenances, and that it must not include two tracts or lots of land unless they be contiguous. But, so long as it remains in one body, the selection may be in such form as will best subserve the interests of the family. When the statutes have been fully complied with, the homestead selection is complete for all purposes, and all the world has notice thereof. No judgment, barring the exceptions named in the statute, constitutes any lien thereon. No officer may levy upon it, and perhaps it may be, as appellant contends, that no sale thereof under execution would pass any title. But in this case, so far as this record shows, there never was any selection of homestead or any homestead declaration filed. True, that fact does not defeat the homestead right. The party still has a right to make his selection; but until he exercises that right the law does not know, and no one can say, where that homestead may be. There is not the slightest presumption that it follows governmental subdivisions of sections. G. A. Ward, the head of the family in this case, owned all of section 9. He could carve his homestead as he chose; keeping only within the limit as to extent or value, and including the dwelling house. Yet it would be absurd to say that the judgment attached as a lien to no part of the section, because any part was liable thereafter to be selected as a homestead. Ward never has selected any homestead in this section of land, and, of course, Patterson cannot select one for him. Nor, as we understand it, does he attempt so to do. His claim is that, as Ward was living upon the southwest quarter of the section at the time of the sale to Patterson, necessarily that quarter section constituted the homestead, without any selection

previously made, and without any indication of the fact at any time prior to the sale. As we have seen, that cannot be true, under our statute. While the party may select his homestead from any portion of a tract much larger than the law allows for a homestead, it necessarily follows that no homestead can be identified until the selection is made. We make our ruling only upon the facts of this case. We do not say that the ruling would be the same when a debtor head of a family resided upon a tract that did not exceed in extent or value the homestead limit as fixed by law. But, where a selection is necessary in order to identify the homestead, then the selection must be made, or the homestead right is waived. We have no statute whatever giving an officer holding an execution any authority or any duty to perform in the matter of selecting the homestead. That rests solely with the debtor and his family. In Wisconsin the statutes exempted "a homestead consisting of any quantity of land not exceeding forty acres used for agricultural purposes, and the dwelling house thereon and its appurtenances to be selected by the owner thereof." In *Kent* v. *Agard,* 22 Wis. 150, the court said: "But we cannot hold that the owner of a homestead right is limited in his selection to the forty acres according to the government survey, upon which his dwelling house is situated. There is nothing in the statute establishing such a limitation, and in many instances it might be extremely inconvenient and disadvantageous. His house might be near the line on one forty, and his barns, outhouses, gardens, etc., be on the adjoining forty. There can be no doubt that in such case it was the design of the statute to allow him to select, without regard to the government survey, any forty acres, in reasonable shape, that would include his dwelling." The constitution of Michigan provided for a homestead exemption, with a limit as to quantity and value. In *Beecher* v. *Baldy,* 7 Mich. 488, the court, by Christiancy, J., at page 506, said: "We think, therefore, that where the whole tract owned and occupied by the debtor does not exceed the quantity mentioned in the constitution, and is admitted to be within the prescribed value, the law, in the absence of any proof, must presume the acceptance by the debtor of the benefit conferred by the constitution, to the full amount of the constitutional exemption; and this upon the same ground that the acceptance of a grant is presumed; that the constitution only contemplates a selection when it is necessary to bring the homestead within the limitation, as to quantity and value, specified in the instrument, and as a means of separating it from a tract of larger amount or greater value, and defining its boundaries." And again, at page 508: "Whenever the tract including the homestead exceeds the quantity limited by the constitution, a selection by the debtor becomes necessary to distinguish that which is exempt from that which may be sold at the instance of creditors. And the debtor, to entitle himself to the exemption of any part of it, must proceed to select it, so far as the law has provided a mode of selection." See, also, *Rogers* v. *Hawkins,* 20 Ga. 200, and *Pinkerton* v. *Tumlin,* 22 Ga. 165. The principle of these

cases is the same as that which requires the debtor to select personal property claimed as exempt. Where, for instance, the statute exempts a team of horses, and the debtor owns but one team, he need make no selection; but, if he own more than one team, he must select, in order to save his exemptions. *Wallace* v. *Lawyer,* 54 Ind. 509; *Cole* v. *Green,* 21 Ill. 105; *Frost* v. *Shaw,* 3 Ohio St. 270; *Butt* v. *Green,* 29 Ohio St. 667; *Twinam* v. *Swart,* 4 Lans. 263; *Turner* v. *Borthwick,* 20 Hun, 119. Nor does the application of this rule in this state amount to permission to the husband to dispose of the homestead right without his wife's consent. She may select the homestead if the husband fail so to do. Section 3621, Rev. Codes. Likewise she may claim exemption if the husband fail so to do. Section 5523, Id. She failed so to do in this case, and she is not before this court asking any relief by reason of such failure.

From these principles we think it follows that plaintiff did receive title under and by virtue of the sheriff's deed, and that such title is superior to any rights of defendant Patterson under the foreclosure decree. But we reach the same conclusion for another reason: After the Paulson judgments had been obtained, executions were issued thereon, and levied upon this tract of land. Thereafter, and while the levy was in full force, an action was brought in aid of this execution, asking to set aside the deed to Patterson, and establish the judgment as a lien upon the land. G. A. Ward and Jessie S. Ward and Daniel Patterson were all parties defendant to that action. If this tract in question were in fact the homestead of the Wards, that defense would have been available to each and all of said defendants, because there cannot be, as to creditors, any fraud in the conveyance of exempt property. But, as stated, no such defense was suggested, and the relief prayed was granted. Now, one of the defendants in that action seeks to avoid a sale made pursuant to the lien established by that decree, by reason of a defense available to him, and which, if pleaded, would have defeated any decree. We think, on plainest principles, this cannot be done. In *State* v. *Manly,* 15. Ind. 8, an action was brought upon a constable's bond to recover, as in conversion, for property sold by the officer on execution which it was claimed was exempt from such sale. An action against the relator had been aided by attachment. He defended the action, but made no claim that the attached property was exempt. Judgment went against him, with the usual order for the sale of the attached property. In deciding the case that court said: "The order for the sale of the property was a final judgment, beyond which the officer was not required to look, and behind which the relator could not go in order to assert his right to claim the property as exempt from sale. If the proper practice be for the officer serving the attachment, upon proper demand, to set apart to the debtor such property as may be exempt from execution, then he only returns, as attached, such as is not thus exempt, and such only is ordered to be sold upon final judgment against the defend-

ant. If, however, such be not the proper practice, and if the officer cannot thus be required to determine, at his peril, whether the defendant is entitled to hold the property as exempt, the remedy of the debtor is sufficiently plain. He may set up his claim, to hold the property as exempt from sale, in the court from which the attachment issues, as a defense to such attachment. *Collins* v. *Nichols, 7* Ind. 447; *Cooper* v. *Reeves,* 13 Ind. 53. If neither of these courses be pursued, but final judgment be rendered against the defendant, and the attached property ordered to be sold, we think it too late for the defendant to set up a claim that the property is exempt from sale for his debts." The case at bar is squarely within that principle. Nor is it any answer to this position to say that, the homestead being absolutely exempt, no exemption need be claimed. It is "the homestead as created, defined, and limited by law" that is absolutely exempt. We have already seen what that means. A mere floating homestead right, unattached to any land in a manner that can identify the land as a homestead, cannot create an absolute exemption in land that may subsequently be designated and identified as a homestead. The judgment and decree of the District Court are made the judgment and decree of this court, and are in all things affirmed. All concur.