## WOOLCUT v. LERDELL et al.

1.  **Deed:** DELIVERY : EVIDENCE.   The evidence in this case consid·
    ered (see opinion), and, though conflicting, *held* to preponderate in
    favor of the claim of defendants, that there was no delivery by
    them of the deed under which plaintiff claims the land in question.

2.  **Homestead :** TO WHOM BELONGING.   Defendants were living with
    their son, on his land, at the time of his death, and had no other
    home.   After the son's death the title of the land passed to them,
    and they continued to live thereon, under an arrangement which
    they made with plaintiff, whereby the latter was to live on the
    land, and provide a home and support to defendants, and plaintiff
    was to have the land.   This contract was, however, abandoned,
    but all parties continued to reside on the land for some time
    thereafter, when defendants left the premises on account of
    unpleasant relations with plaintiff, but with no intention ʇo
    permanently abandoning the premises as a home.   *Held* that the
    premises were, and continued to be, defendants' homestead.

3. **Homestead:** IN LAND NOT PLATTED : CONTRACT TO SELL. Where a tract of land is occupied by the owner and his family, but the homestead is not platted, the homestead right attaches to every part of it (*Goodrich v. Brown*, 63 Iowa, 247), and an agreement for its sale, signed by the husband alone, is void. (See *Barnett v. Mendenhall*, 42 Iowa, 296.)

*Appeal from Emmett District Court.*—HON. GEORGE H. CARR, Judge.

FILED, OCTOBER 26, 1889.

ACTION to enforce specific performance of the sale of real estate, and to quiet the title thereto. The district court gave judgment for the defendants, and the plain-tiff appeals.

*J. W. Cory*, for appellant.

*J. G. Myerly*, for appellees.

GRANGER, J.—The defendants were the parents of Henry Lerdell, who died intestate in January, 1886, seized of the real estate in question, situated in Emmett county, Iowa. The plaintiff is a son-in-law of the defendants, who, at the death of Henry Lerdell, lived in Minnesota. Henry, at the time of his death, lived with his parents on the land in question. After the death of Henry, the plaintiff and his wife, in pursu-ance of an agreement to furnish rooms for the defendants, and certain provisions and money, as a support, moved on the land, and have since resided there, and were, for the consideration named, to own the premises. Some two or three months thereafter, this agreement was, by consent, set aside, and another made, the terms of which the parties are not exactly agreed upon, but in pursuance of which a quitclaim deed of the premises was executed by both defendants. As to the delivery of this deed there is a dispute, and the fact is to be found from the evidence. At the time of making the contract under which the deed was signed, there was a transfer of certain personal property from

defendants to plaintiff, the value of the land being fixed at eight hundred and eighty-five dollars, and that of the personal property at one hundred and fifteen dollars; the sale of both kinds of property, however, being one transaction. The plaintiff's claim is that, at the time of making the quitclaim deed, it was agreed that the defendants were afterwards, when the settlement of the estate of Henry Lerdell would permit, to make him a warranty deed for the premises; and that afterwards, on the second of October, 1886, the plaintiff and the defendant T. T. Lerdell executed a written agreement for the sale of said premises and personal property for the agreed price of one thousand dollars, and for the execution of a warranty deed therefor as soon as the title was approved; which agreement was not signed by the defendant Agatha Lerdell. The plaintiff asks that the defendants be decreed to specifically perform the contract to convey, and that the title to the land be quieted in him. Defendants claim the premises as a homestead, and insist that there never was a delivery of the quitclaim deed, and no valid agreement to convey, under the law.

I. We first inquire as to the effect of the quitclaim deed. It is not disputed but that, if delivered, it would pass the title; and we must look to the evidence to find the fact. To us, in view of the evidence, the question is not doubtful. It very clearly preponderates in favor of the defendants. There is no pretense that the land was to be sold on time, but the sale was to be for cash. The plaintiff nowhere says he was to have the deed except upon payment for the land in full. There was a payment of one hundred and fifteen dollars, which defendants regard as a payment for the personal property, and the plaintiff as a payment on both the personal and real property; that is, a part payment of the one thousand dollars agreed upon as a consideration for all the property. The plaintiff, in his testimony on cross-examination, says: "I bought the personal property in the fall of 1886, and the price was one hundred and fifteen dollars, and

1. DEED: delivery: evidence.

the land was eight hundred and eighty-five dollars. That is the way each was reckoned. The land and personal property was one contract, and there was no separate contract. I bought the whole thing." In the same connection, he says: "The quitclaim deed was handed to me by T. T. Lerdell, Sr., when it was made. I handed it back to him after Armstrong said it was all right. I thought they ought to keep the deed until I paid the balance. I thought the deed was mine. I was to pay eight hundred and eighty-five ·dollars when they gave me the warranty deed. The quitclaim deed was to convey the land to me. I was to pay the balance when· they gave me a deed and I could make a loan on the land, and not until then." Further on in his testimony, he says: "I thought I could get a loan on the quitclaim deed."

Before referring to other testimony, it may be said that plaintiff's testimony as to the delivery of the deed is not entirely consistent. If defendant Lerdell delivered to him the deed, and he expected to use it to secure a loan on the land, why should he return it to Lerdell to await the payment of the balance of the purchase money? To our minds, it is a strong concession that the delivery of the deed, and the payment of the balance, were to be at the same time. Other testimony, added to this, places the question really beyond controversy. Mr. and Mrs. Lerdell (defendants) both say that it was agreed that the payment was to be when the deed was delivered, and, if the payment was not made the next day, the deed was to be burned. T. T. Lerdell, Jr., a son of defendants, a man of forty-five years, says: "I was present when the defendants made the quitclaim deed for the land in suit. I heard the contract for the sale of the land. The old folks sold the land for eight hundred and eighty-five dollars cash, which was to be paid the next day, and, if not, the deed was to be destroyed. The old folks were to hold the deed until they got the money, which was to be the next day. This is what Armstrong, the man who made the deed, said." Armstrong, who wrote the deed and took

the acknowledgment, says: "It was agreed at the time the deed was made that the plaintiff was to have the said deed when he paid the balance due on the purchase, which he was to get by making a loan on the land. I was present when the sale was made.  *  *  * I know the quitclaim deed was made to convey absolutely the land to the plaintiff, and not for any other purpose." Mrs. Woolcut, wife of plaintiff and daughter of defendants, was present at the sale and making of the deed, and says: "I saw the deed made and delivered to the plaintiff, and it was talked between them, and agreed, that the plaintiff should pay the balance when he could make a loan on said land, and when he got a warranty deed from the defendants for the same. There was nothing said or agreed between plaintiff and defendants that the deed should be burned or destroyed if the eight hundred and eighty-five dollars was not paid the next day. I was present at all times when the sale was made."

It is to be kept in mind that we are now considering the single point if the deed was delivered. Other points will be noticed in order. The testimony of Mrs. Woolcut is directly in conflict with that of defendants, Armstrong and T. T. Lerdell, Jr., and to some extent with that of her husband, and to some extent she corroborates her husband. The preponderance, however, as before said, is largely with the defendants. The most that can be claimed for the testimony is that it shows that the deed was to be delivered on payment of the balance, but that the money was to be raised by a pledge of the land as security; and the proofs show that the deed was at the bank on the next day for delivery, if the loan could be obtained on such a title, which could not be done, and there was no delivery of the deed. The authorities cited by appellant are far from applicable to such a state of facts, and we only understand them to be urged under a different view of the testimony.

II. In view of the fact that defendants resist the claim of plaintiff for a decree for specific performance

2. HOMESTEAD: to whom belonging. to convey under an agreement so to do, it is important to inquire if the premises were invested with the homestead character. Before Henry Lerdell's death, his parents (defendants) lived with him on the premises. They had no other home. At his death the title of the land passed to them. They were aged people, and at once commenced to arrange to live on the premises, and to that end agreed with plaintiff to come there with his family, and furnish them a warm room to live in during their lives, with certain provisions and money, and plaintiff was to have the farm. The evidence does not in terms disclose whether, under the agreement, the home of the defendant was to be on the premises, but such is a reasonable inference from the surrounding facts ; but, inasmuch as the agreement was soon abandoned, the importance of the particular understanding in that respect is not worthy of further inquiry. It is a fact that both plaintiff and defendants continued to reside there till the change of contract, and thereafter till November, 1886. At the time of making the quitclaim deed in question, there was a reservation of five acres for the use of the defendants; and all the testimony shows that, unless sold, these defendants expected to continue the occupancy of the premises as a home. There is no fact better established in the case. They left the premises in November, 1886, but it was because of the unfriendly relations between the plaintiff's family and them, and not from a desire or purpose to abandon the premises as a home, but merely as a present expedient.

III. With the homestead character established, is there any remaining ground on which there can be a 3. HOMESTEAD: in land not platted: contract to sell. decree for specific performance, or the title quieted in plaintiff? The homestead had not been platted under the provisions of Code, section 1998, and hence the homestead right extended to every part of the premises. *Goodrich v. Brown*, 63 Iowa, 247. The written agreement signed by T. T. Lerdell, October 2, 1886, was not signed and

VOL. 78—43

concurred in by the defendant Agatha Lerdell, and as to a homestead the contract was void. *Barnett v. Mendenhall*, 42 Iowa, 296, and cases cited. With the facts established as to a homestead right, and the non-delivery of the quitclaim deed, there is no basis for the plaintiff's recovery, and the judgment of the district court is          AFFIRMED.