LEONARD A. DAVIS V. ALLEN R. KELLY ET AL.

FILED OCTOBER 1, 1901. No. 10,247.

Commissioner's opinion, Department No. 2.

1. **Homestead:** CONSTRUCTIVE OCCUPANCY: TEMPORARY ABSENCE. Where property not occupied by the claimant and his family is claimed as a homestead, such claimant must show either a constructive

occupancy, as in case of temporary absence without abandonment, or a bona-fide present intention and preparation to occupy followed by actual occupancy within a reasonable time.

2. ———: OCCUPANCY: PRESENT INTENTION: EVIDENCE. Bare intention to occupy such property as a homestead at some future time is not of itself sufficient to impress it with the character of a homestead, while it remains unoccupied; there must be a present intention so to occupy the property as soon as circumstances reasonably permit, evidenced by acts of preparation indicating such intention.

3. **Two Homesteads:** INTENTION TO OCCUPY IN FUTURO. No one can have two homesteads at the same time. Hence where the claimant and his family are actually occupying property belonging to him as a home, intending to remain for the present, an intention to remove to some other tract owned by him and occupy the latter as a home at some indefinite future period will not enable him to claim it as a homestead.

4. **Certificate of Acknowledgment.** A certificate of acknowledgment in proper form may be impeached only by clear and convincing evidence of its falsity.

ERROR from the district court for Douglas county. Tried below before SCOTT, J.  *Reversed.*

*Montgomery & Hall,* for plaintiff in error.

*W. C. Lambert,* contra.

POUND, C.

In June, 1892, the defendant, Allen R. Kelly, borrowed $1,500 of the plaintiff, and as security for such loan executed a mortgage upon the property in controversy. At that time the property was wholly vacant and unoccupied. The money was used in erecting a house upon it, but proving insufficient for that purpose, Kelly obtained of the plaintiff the further sum of $500, and, in October, 1892, executed a new mortgage for $2,000, the old one being released. Mrs. Kelly's name appeared to be signed to this mortgage, and there is a certificate of a notary that she duly acknowledged it before him as her voluntary act and deed. The house was completed in the fall of 1892 and was rented to tenants for the next four years. It was not

occupied by Kelly and his wife until October, 1896. When the mortgage was executed they lived in a house upon an adjoining lot which, we think the evidence fairly shows, belonged to Kelly. This lot was sold about that time; but instead of moving into the property in controversy, they occupied another house in a different block which he owned also. This suit was brought to foreclose the mortgage last executed. The defendants Kelly answered separately, alleging that the property was their homestead at the time the mortgage was executed, and that Mrs. Kelly neither signed nor acknowledged the instrument. On the trial it appeared and was admitted that she signed it, and we think it was made reasonably to appear that she did so knowingly and understandingly. But she testified that she did not acknowledge the instrument, and the lower court, holding the certificate of acknowledgment sufficiently impeached, and that the property had been shown to have been a homestead at the date of the mortgage, rendered a decree for the defendants and dismissed the suit.

We think the trial judge was clearly wrong upon both points. It is true that actual occupancy is not absolutely required in every case where a homestead is claimed. Nevertheless, occupancy is the test established by the statute, and it is only through liberal construction to meet the beneficent ends of the statute that certain substitutes therefor have been permitted. The most usual is what has been called constructive occupancy, as, for example, where property occupied as a homestead has been temporarily vacated without abandonment and with a bona-fide and subsisting intention to return. Another has been permitted in case of vacant and unimproved property in present process of preparation for a home and in other cases where property purchased for use as a homestead is for some temporary reason not available as such, but is preparing as fast as may reasonably be expected. In such cases, where there is a bona-fide present intention and preparation to occupy the property as a homestead, followed by

actual occupancy within a reasonable time, it is entirely within the bounds of legitimate construction to hold the property a homestead. *Hanlon v. Pollard,* 17 Nebr., 368; *Swaney v. Hutchins,* 13 Nebr., 266. But it does not follow that a bare intention to occupy such property at some future time will of itself suffice to impress the property with the character of a homestead while it remains unoccupied. Much less, where an unreasonably long period intervenes, during which tenants are placed in possession and the claimant and his family actually live upon other land belonging to him, should such a vague and general intention suffice to make the belated occupancy relate back to the acquisition of the land. There must be a present intention to occupy it as a homestead as soon as circumstances reasonably permit, evidenced by acts of preparation indicating such intention. *Grosholz v. Newman,* 21 Wall. [U. S.], 481; *Evans v. Calman,* 92 Mich., 427, 52 N. W. Rep., 787; *Ingels v. Ingels,* 50 Kan., 755, 32 Pac. Rep., 387, and cases cited; *Edgerton v. Connelly,* 3 Kan. App., 618, 44 Pac. Rep., 22; *O'Brien v. Woeltz,* 58 S. W. Rep. [Tex.], 943; *Wilkerson v. Jones,* 40 S. W. Rep. [Tex. Civ. App.], 1046. The cases cited in behalf of defendants are in full accord with these principles. In *Hanlon v. Pollard,* 17 Nebr., 368, the property was purchased for a homestead, but occupancy was prevented by the unexpired term of a tenant. Possession was promptly taken on its expiration, and the levy there in question was made but a few days prior thereto. In *Deville v. Widoe,* 64 Mich., 593, 31 N. W. Rep., 533, the claimant was actually building his house upon the land at the time of the levy, and as soon as it was completed, which was within a few months, moved into it. The court held it was a homestead at the date of the levy. In the case at bar, if the defendants Kelly had proceeded to occupy the house when completed, there would be ground for their claim. But their failure so to do for four years is not to be disposed of by the general statement that they were unable to furnish the house, uncorroborated by a single act of preparation, especially in view of their occu-

pancy of other houses belonging to the husband which they evidently could furnish. They acquired the land six or seven years before they occupied it. Their acts in the meantime are not consistent with the alleged intention. *State Bank v. Peak*, 3 Kan. App., 698, 44 Pac. Rep., 900. Moreover, no one can have two homesteads at the same time. Where the claimant and his family are occupying property belonging to him as a home, intending to remain for the present, an intention to remove to some other tract owned by him and occupy the latter as a home at some indefinite future period will not enable him to claim it as a homestead. *Swenson v. Kiehl*, 21 Kan., 533; *Archibald v. Jacobs*, 69 Tex., 248, 6 S. W. Rep., 177; *O'Brien v. Woeltz, supra; Allen v. Whitaker*, 27 S. W. Rep. [Tex. Civ. App.], 507. "If he occupies one dwelling as a residence, and intends to continue such occupation for the present, a purchase of another residence does not invest that with the character of a homestead simply because of an intent, at some future and more convenient time, to make it his home." *Swenson v. Kiehl, supra*. In the case at bar, the defendants disposed of one homestead and acquired other property which they occupied as a home long after the house on the property in question was completed. Under such circumstances, to allow their general intention to use that property as their home at some time in the future to relate back four years to the time when the mortgage was executed and the house built, would stretch the language of the statute beyond all reason. *Gibson v. Mundell*, 29 Ohio St., 523, 528.

We think also that the evidence is not sufficient to impeach the certificate of acknowledgment. Where there is such a certificate in proper form, it may be impeached only by clear and convincing evidence of its falsity. *Thams v. Sharp*, 49 Nebr., 237, 241, and cases cited. The notary testified positively that Mrs. Kelly acknowledged the instrument. Her testimony to the contrary is characterized by not a little evasion and equivocation, and is shaken by her attempts to deny, first that she signed the mortgage,

and afterwards that she signed it knowingly. She admitted signature, and her own testimony affords good ground for belief that she knew what she was signing.

It is recommended that the decree be reversed and the cause remanded with directions to render a decree of foreclosure as prayed.

SEDGWICK and OLDHAM, CC., concur.

By the Court: For the reasons stated in the opinion the decree is reversed and cause remanded with directions to render decree as prayed.

REVERSED AND REMANDED.

SULLIVAN, J., absent, not voting.