(88 N. W. Rep. 80.)

---

TALLAK BROKKEN *vs.* HENRY J. BAUMANN, *et al.*

Opinion filed Nov. 14, 1901.

**Public Lands—Entry—Mortgage—Validity—Homestead—What Constitutes.**

A married man in poor circumstances, and physically crippled, and not contributing enough towards the entire support of his family, filed upon and made final proof for 160 acres of government land, upon proof satisfactory to the land department of the government of five years' residence and cultivation of such land. His residence and his improvements thereon were meager, and his shanty thereon was not habitable at all times of the year. Soon after submitting such proof he moved the shanty away from the land. His wife never actually resided on the land. The husband never resided there after submitting such proof. About five months after the making of the proof he made a loan, secured by a mortgage, on such land, the wife refusing to join in such mortgage. *Held:*

1. That the mortgage was valid.

2. That the land was never occupied or resided upon as a homestead, under § 3605, Rev. Codes, and was not exempt.

3. That, before the homestead right attaches to land under such section, there must be actual or constructive residence on the land, with a view to making it a home.

4. Mere intention to occupy such land is not sufficient, in the absence of some acts indicative of carrying such intention into immediate execution to some extent.

5. That the action of the land officers in accepting such proof and issuing a certificate had no conclusive effect as to anything as continuing after the acceptance of such proof.

Appeal from District Court, Richland County; *Lauder, J.*

Action by Tallak Brokken against Henry J. and Nellie V. Baumann. Judgment for defendants, and plaintiff appeals. Reversed.

*A. J. Bessie* and *L. B. Everdell,* for appellant.

Abandonment is a mixed question of intention and fact. *Kuhnert* v. *Conrad,* 6 N. D. 215, 69 N. W. Rep. 185. Abandonment of realty will be presumed where the party leaves no property or improvement to indicate his intention to return and resume the occupancy of the land. *Burke* v. *Hammond,* 79 Pa. St. 172. It is the use with intent combined which impresses the homestead stamp upon real estate. *Clark* v. *Evans,* 60 N. W. Rep. 862; Waple's Homesteads, 190; *Leonard* v. *Ingraham,* 10 N. W. Rep. 804. The homestead which the statute exempts is the land with the dwelling house thereon and its appurtenances owned and occupied by a resident of the state. To call the premises the homestead of the debtor and his family, when the debtor resides elsewhere and leaves the premises vacant, would be a misnomer. *Tillotson* v. *Millard,* 7 Minn. 424; *Folsom* v. *Carli,* 5 Minn. 333; *Kelly* v. *Baker,* 10 Minn. 124; *Grange* v. *Gough,* 4 Pac. Rep. 1177; *Koons* v. *Rittenhause,* 28 Kas. 258. A mere vague intention to return some time in the future, which may be entirely consistent with the fact of having gained a new homestead, will not be sufficient to preserve the homestead right. *Donaldson* v. *Lamprey,* 11 N. W. Rep. 121; *Savings Bank* v. *Kennedy,* 12 N. W. Rep. 479; *Schoffen* v. *Landauer,* 19 N. W. Rep. 95.

*J. A. Dwyer* and *Charles E. Wolfe,* for respondents.

Homestead statutes are to be construed liberally in favor of the exemption. *Kingman* v. *O'Callaghan,* 4 S. D. 628. Five months before the making of the mortgage in question the land was proved up as a homestead by Henry Baumann, such proof showed actual residence upon the tract for five years preceeding proof. § 2299 Rev. St. U. S. The fact of the establishment of the homestead of the defendants on the land was found by the officers of the land department in a proceeding properly before them. Such finding will not be disturbed. *Parsons* v. *Venske,* 4 N. D. 451 and 469; *St. Louis Smelting Co.* v. *Kemp,* 104 U. S. 657; *Minter* v. *Crommelin,* 18 How. 87; *Bangnell* v. *Broderick,* 13 Pet. 448. The fact that the wife does not reside on the place is immaterial. *Rosholt* v. *Mehus,* 3 N. D. 513,

*Griffen* v. *Nichols,* 17 N. W. Rep. 63. If the wife, by reason of cruelty of the husband, leaves him and the homestead, she forfeits none of her rights to the homestead thereby. *Barker* v. *Dayton,* 28 Wis. 367; *Keyes* v. *Scanlan,* 63 Wis. 345; *Rosholt* v. *Mehus,* 3 N. D. 513; 9 Am. & Eng. Enc. L. 487. A tract of land does not cease to be a homestead, within the meaning of the law, simply because, at a particular time, there is no house upon it fit to live in. *Edmonson* v. *White,* 8 N. D. 72. The homestead right cannot be waived by the husband alone. *Beecher* v. *Baldy,* 7 Mich. 488; *Dye* v. *Mann,* 10 Mich. 291; *King* v. *Moore,* 10 Mich. 538; *Comstock* v. *Comstock,* 43 Mich. 515. The acts of Henry Baumann, claimed by plaintiff to be evidence of abandonment, were done after his desertion of Nellie Baumann, and after they had ceased to live together by reason of his neglect, cruelty and desertion, her right was not thereby forfeited. *Phillips* v. *Stauch,* 20 Mich. 369; *Bruner* v. *Bateman,* 66 Ia. 488; *Lies* v. *DeDiabler,* 12 Cal. 329. Defendant's abandonment of the homestead was temporary merely with intention to return, manifested by his voting in the township, claiming it as his residence, in November, 1900. *Clark* v. *Evans,* 60 N. W. Rep. 862; *Holden* v. *Pinney,* 6 Cal. 234; *Dunn* v. *Tozier,* 10 Cal. 171; *Bradshaw* v. *Hunt,* 57 Ia. 745; *Griffen* v. *Nichols,* 17 N. W. Rep. 63; *Reske* v. *Reske,* 16 N. W. Rep. 895.

MORGAN, J. This is an action to foreclose a mortgage on real estate. The facts material to the issues are as follows: Some time in the year 1892 the defendant Henry J. Baumann made an entry of the land involved, being 160 acres, under and by virtue of the homestead laws of the United States, at the United States land office at Fargo. He was then a single man, but on January 21, 1896, he and the defendant Nellie V. Baumann intermarried, and commenced living together as husband and wife, but not on the land on which he had made homestead entry. They first went to living at her mother's, but for how long does not appear. After that they lived at his father's for six weeks. She then moved back to her mother's, and lived there. Later he followed her to her mother's, but how long he remained there does not appear. Her mother lived about 12 miles from the husband's homestead claim. He had a shanty on such claim, 14x16, of rough boards, not sided, but tar-papered. The furniture kept in this shanty was a stove, some chairs and a bed. The husband had some personal property besides, consisting of two horses, a colt, and a buggy, but it does not appear that such personal property was kept on his homestead claim. The wife never actually lived on this homestead claim, nor was she ever on the land, either before or after the proof. She gave birth to two children after their marriage, only one of them being now alive. The wife has been in poor health at times since their marriage, and unable to do any work for months at a time. The husband is a cripple, having lost one leg, and is not able to do any kind of work on the farm that requires walking. He did not sup-

port his wife, but gave her some money at times. She was supported by her mother to a great extent. Their married life was not a happy one, he being cross and disagreeable to her. Some part of this land was under cultivation, and was put into crop each year by one of the neighbors, the husband getting one-fourth share of such crop, until the year 1899. In 1900 and 1901 the land was rented by the defendant Nellie V. Baumann to a tenant, and she received a share of the crops. On September 4, 1897, he received a final receiver's receipt for this land from the Fargo United States land office, after having submitted testimony as to residence on, and cultivation of, the land for five years. Very soon after submitting such final proof he moved the shanty from this land to her mother's place, and fixed it up as a granary. In the fall of 1897, or during the winter of 1898, the husband commenced negotiating for a loan on the land in question from the plaintiff. The loan was made, and the mortgage executed and delivered on February 3, 1898. The note and mortgage in suit purport to have been signed by both defendants, the husband and wife. The wife did not sign the note or mortgage nor acknowledge the execution of the mortgage. Her name attached to these instruments were forgeries. Both the plaintiff and his agents acted without any knowledge or intimation of such forgery. The mortgage was duly recorded in the office of the register of deeds of Richland county. Upon the mortgage was indorsed a certificate by a notary public of the facts, sworn to by a person puporting to have witnessed the signature of the defendant Nellie V. Baumann, as provided by § 3580, Rev. Codes. The affidavit made by such person as such subscribing witness is conceded by the plaintiff to have been wholly false, and nothing is claimed as based on such certificate. The wife was requested to sign such mortgage by persons representing her husband, but she refused to so do, saying that the homestead was hers, and that she wanted it, or at least some of the money they were going to get on the loan. The husband never lived on the land after submitting his testimony to the land office upon his final proof. The date of the receiver's receipt was September 4, 1897. Some time in the fall of 1897 or the winter of 1898 he went into the hotel and restaurant business at Sisseton, S. D. After leaving Sisseton he engaged in selling medicines as a peddler in various localities. The wife received none of the money that was received by him from the loan made of the plaintiff. About September 18, 1900, the defendant Nellie V. Baumann commenced an action for a divorce against the defendant Henry J. Baumann, alleging his failure to support her, willful desertion, and extreme cruelty. The defendant appeared in such action by his attorneys, but such appearance was withdrawn on February 25, 1901, and on February 26, 1901, the court ordered a decree of divorce to be entered. In this action the court assigned the land in question to the wife and awarded her the custody of the infant child. In such findings the land involved in this case, and which was assigned to the

wife, was found to have been "the legal and actual homestead of the plaintiff and defendant." · Since this divorce was granted and this land assigned to her the plaintiff has not resided thereon but has leased · the same to another, she to receive one-fourth of the crop raised on the tillable land, and the same proportion of the hay cut therefrom. The person to whom this land was leased by her did not reside on the land. The defendant Henry J. Baumann did not appear at all in this action. The defendant Nellie V. Baumann appeared and answered by way of general denial, and further answered that at the date of the mortgage attempted to be foreclosed she was the wife of the defendant Henry J. Baumann, and that the land described in such mortgage was then the actual homestead of herself and husband, and that she has never conveyed and waived her rights to, or interest in, the same. The trial court found in her favor upon all the issues involved, and dismissed the action. The plaintiff appeals from such judgment of dismissal, and requests a trial anew of all the issues involved.

There is but one question involved on this appeal, and that question is, was the land in question the homestead of the defendants on February 3, 1898, the date of the mortgage attempted to be foreclosed under the laws of the state of North Dakota? If it was their homestead, then the mortgage was not valid as to either of the defendants; if it was not, then the mortgage was valid by virtue of the execution and acknowledgment of the husband, without the signature or concurrence of the wife thereto. To decide this question, it will be necessary to determine whether the land in question was ever the homestead of the defendants, under the laws of the state of North Dakota. In order to do this, we will consider the evidence relating to the occupancy of the land in question, as it has a direct bearing upon the actions of the defendant Henry J. Baumann at the time of submitting his final proof and immediately thereafter. In so considering such evidence, it is done solely with a view of a proper determination of his relation to the land at the time of, and immediately after, such proof. So far as this case is concerned, the decision of the land office is conclusive that the title to the land is in the defendant Henry J. Baumann. The decisions of the land department of the federal government ·in such matters are not reviewable by the courts in collateral proceedings The decisions of such department, when it has jurisdiction, are conclusive as to questions of fact, and cannot be assailed except in· direct proceedings, where fraud or mistake or imposition is alleged. *Refining Co.* v. *Kemp,* 104 U. S. 636, 26 L. Ed. 875; *Parsons* v. *Venzke,* 4 N. D. 469, 61 N. W. Rep. 1036, 50 Am. St. Rep. 669. Therefore the title of the defendant could not be disturbed in this suit, although the action of the land department might have been erroneous.

The evidence as ·to the residence of the defendant Henry J. Baumann on the land in question prior to September 4, 1897, is the following: As to such residence his father testified as follows:

"He went up from my place out each night, and didn't come back until morning. He did that frequently. I cannot remember how many times during the year [1897], but more than twice. I do not remember but he was particular to be there every so often, as the law requires. He went there just before he made final proof, and took some boys with him from my home,—any boys that stayed with him at that place overnight." Another witness testified, in part, as follows: "I think Henry J. Baumann proved up on this land the 6th or 7th of August, 1897. Before and since that time I worked it. He came there once in a while but I never saw him. He probably came around every year once or so. He has been around since he first filed on the land, but not since he proved up." This witness lived 30 rods from the land in question. On cross-examination he said: "I can't say that he ever lived on this land. He went there once in a while and stayed there. Whether he stayed overnight I can't swear. I don't know. I don't know whether he had any other home. He always stayed with the old folks." Another witness, after stating that from appearances the shanty on the claim was not habitable the year around, says: "During my visits I never met them, or either of them, on that tract. I have been over the tract five or six times during the year, and never met them there, nor saw any one residing on it or in the house." This witness lived two miles from the land in question. On cross-examination he testified: "He never, to my knowledge, lived a day on that land. I don't know whether he did or not. I simply testify to what I have seen. He may have been there two or three days at a time and I not know it. The only difference I noticed in his relation to the land before the proof and after the proof was that he moved the shanty away."

The foregoing is all of the evidence bearing on the question of his residence on the land in question. The evidence as to the shanty that was on the claim is described by one witness as "a claim house, not sided or anything; just tar paper, I think." Another witness says it was not habitable at all times of the year. As to the furniture in the shanty, the evidence shows it consisted only of a stove, bed, and chairs. There is no evidence that there were any cooking utensils there, nor any evidence that any meals were ever prepared there. There is no showing that he had ever remained there save as stated, at night. He never slept there after the proof was submitted. Very soon after his proof was submitted by him he tore the shanty down, and hauled the lumber to his mother-in-law's place, where it was used to fix a granary. A careful reading of the whole testimony convinces us that this land was never occupied by the defendants, or either of them, as a homestead, or as a home, under the state law. When occupied by the defendant it was solely for the purpose of making proof before the land office. It was an occupancy for the purpose of getting title to the land, and not for the purpose of making for himself or family a home. He never occupied it after the title passed from the

government to him. All of his actions, so far as the record shows, conclusively show that there never existed in his mind any intention of retaining even the appearances of occupancy after he proved up.

When he moved the shanty to his mother-in-law's place there was no declaration that he intended to build another house or to ever live on the land, nor was there ever filed in the office of the register of deeds a declaration of homestead, as provided for by § 3620, Rev. Codes. Not from the day that he made his homestead proof up to election day, 1900, did he ever intimate in any way that he claimed that as his home. On election day he desired to vote, and was about to be challenged as a voter, when he said that he claimed the homestead as his home. But for over three years it could not have been his home, as there was no kind of habitation on the land. The record will be searched in vain for any expression or act of his indicating that he ever had the idea in his mind of a permanent occupancy of this land as his home, either for himself or family. Title to the land is all that he ever sought, and before that was secured his occupancy thereof ceased, as shown by acts not of any doubtful meaning.

He never having occupied the land as his homestead, under the laws of the state, his wife could acquire no homestead rights therein. It never became their homestead by actual or constructive occupancy. Residence of some kind is a necessary prerequisite to obtaining homestead rights to lands. In *Edmonson* v. *White,* 8 N. D. 72 76 N. W. Rep. 986, this court has held that the presence of a house on the land in all cases, at all times is not necessary. Fires or storms may destroy the dwelling house. The absence of the occupants during the time of rebuilding in such cases is not an abandonment or a forfeiture of homestead rights, and courts will construe efforts and intentions to build on and to occupy premises liberally. But mere intentions alone to build will not save the homestead after long lapses of time. There must be present some acts indicating that parties are acting in good faith towards occoccupying the land, besides the intention. The authorities are about unanimous on this proposition. *Swenson* v. *Kiehl,* 21 Kan. 533; *Scofield* v. *Hopkins,* 61 Wis. 374, 21 N. W. Rep. 259; *Woodbury* v. *Warren,* (Vt.) 31 Atl. Rep. 295, 48 Am. St. Rep. 815; *Evans* v. *Calman,* 92 Mich. 427, 52 N. W. Rep. 787, 31 Am. St. Rep. 606; *Ingels* v. *Ingels,* 50 Kan. 755, 32 Pac. Rep. 387; *Davis* v. *Kelly,* (Neb.) 87 N. W. Rep. 347. It is claimed that the defendant's refusal to support his wife, and his desertion of her, would be sufficient grounds for holding that her homestead right attached without actual occupancy. We do not understand that this would be the case where neither ever occupied the homestead nor made any efforts to do so after ownership of the premises. Had the wife actually occupied the homestead, and been compelled to leave it because her husband had deserted her or failed to support her this contention would be sustained.

The grounds of our decision are that there never were any homestead rights gained in this land by either under our laws. Granting all the presumptions allowable to the action of the land department, still the facts are that there was no homestead right gained to this land under the state law, and no presumptions arising by virtue of such accepted final proof that the occupancy continued for another purpose entirely different from the purpose in view in gaining title under the government laws. These premises were never actually or constructively occupied by husband or wife as a home, and until there is such occupancy or residence the homestead right does not attach under our statute. § 3605, Rev. Codes. The cases are numerous bearing out this principle also. *Borehaim* v. *Byrne*, 83 Cal. 23 23 Pac. Rep. 212; *Woolcut* v. *Lerdell*, 78 Iowa 668, 43 N. W. Rep. 609; *Kelly* v. *Dill*, 23 Minn. 435; *Power* v. *Bird*, 18 Mont. 22, 43 Pac. Rep. 1094; *Scofield* v. *Hopkins*, 61 Wis. 370, 21 N. W. Rep. 259.

It is contended that because the defendant voted in November, 1900 and then claimed this homestead as his home, that fact shows that it was then his homestead. We cannot give that effect to that fact. The fact of voting is competent evidence to show where a man's residence is, but slight evidence of that fact, and has no weight with us in this case, in view of the other facts found in the record. Abb. Tr. Ev. p. 137. If the fact of voting did show such intention, it would still be insufficient, without some act towards the land showing an active effort to occupy the premises. If he was a legal voter there, it could only have been by virtue of residence at his father's. At times the wife, also, made some vague statements that she would have occupied the premises with her husband if she were able to, but such statements are not ever considered sufficient, alone to initiate homestead rights without some accompanying acts showing that such intentions are made in good faith. These vague statements by the wife were mostly made at the trial as to what her past intentions were, and were not made at any time prior, save when asked to sign the mortgage, when she refused to sign, saying that the place was her home, and that she would not sign unless she got some of the money that was to be received on the loan. Although the wife's rights are zealously guarded by courts when they have attached to the homestead, we find no cases going to the extent of creating rights that have never existed as to husband and wife, thus defeating liens that have attached. Had either of the defendants ever resided on this land, under the state laws, and been unable to continue living thereon, their and her rights to the homestead could have been preserved by filing a declaration of homestead. This was not done, and tends to show that they never intended to reside thereon. See *Foogman* v. *Patterson*, 9 N. D. 254, 83 N. W. Rep. 15.

The judgment is reversed, and the district court is directed to order a decree of foreclosure pursuant to the demand of the complaint. All concur.