In re MALLOY.

(District Court, W. D. North Dakota. July 20, 1910.)

1. HOMESTEAD (§ 23*)—EXEMPTIONS—REQUISITES—HEAD OF A FAMILY.

A bachelor, who is not the head of a family, is not entitled to a homestead exemption under the laws of North Dakota.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. § 32; Dec. Dig. § 23.*]

2. HOMESTEAD (§ 32*)—PROPERTY ACQUIRED BEFORE MARRIAGE.

Property acquired by a bachelor before marriage may be exempt as a homestead, provided he takes steps to actually reside thereon as the head of a family within a reasonable time thereafter.

[Ed. Note.—For other cases, see Homestead, Dec. Dig. § 32.*]

3. HOMESTEAD (§ 32*)—EXEMPTION—RESIDENCE—INTENTION.

Where a bankrupt before marriage had acquired title to 160 acres of land under the United States homestead law, and three months after making final proof left the land, leaving only the furniture usually found in a settler's cabin, and after marriage began housekeeping in a city, and had never at any time resided on the land with his wife, his mere mental intention to occupy the land as his homestead was insufficient to entitle him to sustain an exemption thereof in bankruptcy.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 40–43; Dec. Dig. § 32.*]

In the matter of M. F. Malloy, bankrupt. On referee's certificate to review an order directing the trustee to set apart certain land as the bankrupt's homestead. Reversed.

Bessie & Greer, for trustee.

Palda, Aaker, Greene & Kelso, for bankrupt.

AMIDON, District Judge. This matter comes before the court upon the certificate of John Hart Lewis, referee, dated May 16, 1910, certifying to the court for review the order made by the referee on April 28, 1910, directing the trustee in bankruptcy to set apart to the bankrupt as exempt the homestead claimed by him. Messrs. Bessie & Greer are attorneys for the trustee in bankruptcy, and Messrs. Palda, Aaker, Greene & Kelso are attorneys for the bankrupt.

The property consists of 160 acres of land, which the bankrupt obtained from the government under the homestead law. He made

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

final proof during the year 1908, and continued to reside upon the land for three months after making final proof. He then went to Williston, where for some time he led a life of dissipation. For the purpose of recovering from this experience he entered a hospital at Fargo. He was married in June, 1909. Since his marriage neither he nor his wife have ever lived upon the land, or done any outward act to prepare it for occupancy as a homestead, or done any outward act indicating an intent to take up their residence upon the land. On the contrary, plaintiff and his wife, after his marriage, leased a house in Williston until April 1, 1910, and set up housekeeping therein; the plaintiff being employed in that city as an accountant at a salary of $80 a month. The referee finds that both the bankrupt and his wife at all times since their marriage have entertained a bona fide intention to make the land in question their permanent home, and to return thereto and actually reside thereon as soon as circumstances rendered it feasible. The only circumstances mentioned by the referee which prevented their going upon the land are these: First, because they did not have sufficient money at the time to live there; and, second, because it was then June, too late in the year to start any farming. Learned counsel for the bankrupt, appreciating the necessity for some outward act in support of the intention to make the land a homestead, relied upon the fact that the bankrupt left in the house upon the land the furniture which he placed there to establish a residence under the federal homestead laws. It also appears that, while the bankrupt was occupying the land as a homestead, his future wife also held a similar claim about 10 miles distant from his land, and that at some time during this period she placed some furniture in the house. The character of the house is not described in the summary of the evidence made by the referee, nor is the furniture therein described. I think it may fairly be inferred that both the house and the furniture are such as are usually found in the abode of homestead claimants under the federal law for the purpose of complying with the requirements of that statute as to residence.

The bankrupt filed his petition in voluntary bankruptcy in the month of December, 1909, and was adjudicated a bankrupt. In the schedules filed in connection with the petition he claimed the land in question as a part of his exemptions under the homestead laws of North Dakota. The referee sustained this claim. I think he fell into error in doing so.

Before any homestead right can attach to property the claimant must possess the status required by the statutes of the state, namely, must be the head of a family. Residence upon the land by a person who does not possess this status cannot be tacked on to his intention after he acquires the status for the purpose of perfecting the homestead right. At the time a man marries, any property which he then holds may be claimed by him as a homestead. Property, however, held at the time of marriage cannot be distinguished from property afterwards acquired. What is necessary to establish a homestead right in the one case is necessary in the other. It is not necessary for a man immediately upon his marriage to go into the actual possession of his

homestead in order to save it from the claims of his creditors, any more than it is necessary for a married man to go immediately into possession of property which he acquires for the purpose of making it his homestead. But when a man marries, if he goes to housekeeping, it must be upon his homestead; or, if the homestead is not then ready for occupancy, he may take up temporary quarters elsewhere, and proceed promptly to prepare the homestead for occupancy. Mere mental intention, however, will not impress upon property the homestead right. It must be followed with reasonable promptness by outward acts which lead directly to the actual occupancy of the property, such as erecting buildings thereon, repairing the same, or moving furniture or other property upon the land preparatory to taking up actual residence upon it.

In the present case, so far as the evidence discloses, the property, when the bankrupt and his wife commenced housekeeping, was ready for actual occupancy. Down to the time of the hearing before the referee, nothing was done either by the bankrupt or his wife towards occupying the land in question, or preparing the same for occupancy. Leaving a settler's furniture in his claim shanty is at most merely passive. It cannot be regarded as an outward act sufficient to convert a mere mental intent into a homestead right. If the bankrupt and his wife had actually dwelt upon the land together, and then left the house with their furniture therein, for a temporary absence even of some months, coupled with an intent to return to the land, this would probably not have amounted to an abandonment of the homestead. Here, however, there had been no occupancy of the land by the bankrupt or his wife after their marriage. The furniture was placed there by the bankrupt when he did not possess the status of the head of a family. Leaving it there after he attained that status cannot, in my judgment, be regarded as an outward act indicating an intent to make the land the homestead of his family.

The law on this subject is stated with accuracy by an able judge in the case of Davis v. Kelly, 62 Neb. 642, 87 N. W. 347, as follows:

"Actual occupancy is not absolutely required in every case where a homestead is claimed. Nevertheless occupancy is the test established by the statute, and it is only through liberal construction to meet the beneficent ends of the statute that certain substitutes therefor have been permitted. The most usual is what has been called constructive occupancy, as, for example, where property occupied as a homestead has been temporarily vacated without abandonment, and with a bona fide and subsisting intention to return. Another has been permitted in case of vacant and unimproved property in present process of preparation for a home, and in other cases where property purchased for use as a homestead is for some temporary reason not available as such, but is being prepared as fast as may reasonably be expected. In such cases, where there is a bona fide present intention to occupy the property as a homestead, followed by actual occupancy within a reasonable time, it is entirely within the bounds of legitimate construction to hold the property as a homestead. * * * There must be a present intention to occupy it as a homestead as soon as circumstances reasonably permit, evidenced by acts of preparation indicating such intention."

A large number of authorities are cited in support of the law as thus declared. Such was the interpretation of the statute of North Dakota

in the case of Brokken v. Baumann, 10 N. D. 453, 88 N. W. 84. See, also, Clark v. Evans, 6 S. D. 244, 60 N. W. 862.

As to property held by a man at the time of his marriage, or acquired by him after his marriage, with the intent in either case of making it the homestead of his family, he is not required to institute a race with the sheriff in order to save the property from the claims of his creditors. Cameron v. Gebhart, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832. But if the land is ready for occupancy as a home, it is necessary that he go into possession of it with reasonable promptness. If the land is not ready for occupancy, and he takes up his residence upon other land, he must then proceed with the same promptness by outward acts to prepare the homestead for actual occupancy. If he takes up his residence upon other property, and for months, as in this case, does nothing to prepare the homestead for actual occupancy, his mere mental intent to take possession of it as a homestead at some future time will not impress the homestead right upon the property.

The order of the referee is reversed.