## In re MALLOY.

(Circuit Court of Appeals, Eighth Circuit. May 18, 1911.)

No. 109.

1. HOMESTEAD (§ 33*)—ACQUISITION—CHARACTER OF OCCUPANCY.
    Under the homestead law of North Dakota (Rev. Codes 1905, § 5049), which exempts to every head of a family a homestead, consisting of the dwelling house in which he resides and not to exceed 160 acres of land.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

if not within a town plat, and which, under the decisions of the Supreme Court of the state. is to be liberally construed, while occupancy is essential to initiate a homestead right, such occupancy may be constructive.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 44–49; Dec. Dig. § 33.*]

**2. BANKRUPTCY (§ 396*)—HOMESTEAD EXEMPTION—RIGHT OF BANKRUPT.**

A bankrupt, more than a year before his bankruptcy and when unmarried, proved up on a government homestead in North Dakota, and after staying on the land three months longer left his furniture in the house and went away. He was compelled later to go to a hospital, where he remained until the following June, when he married, obtained employment in a town 100 miles from his farm, and rented a house until April 1st following; it being then too late in the season to put in a crop. In December he was adjudged a bankrupt. He and his wife intended at all times to remove to the farm as soon as circumstances rendered it feasible and make it their home. Before their marriage his wife had also proved up on a homestead, and sent some of her furniture to his house, where it was left. *Held*, that such occupancy, together with their bona fide intention. impressed the land with the homestead character, and that he was entitled to have it set aside as exempt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 670; Dec. Dig. § 396.*]

Petition for Review of Order of the District Court of the United States for the District of North Dakota.

In the matter of M. F. Malloy, bankrupt. On petition by the bankrupt to review the order of the District Court (179 Fed. 942). Reversed.

John E. Greene and L. J. Palda, Jr., for petitioner.
Bessie & Greer, for trustee.

Before HOOK. Circuit Judge, and RINER and WM. H. MUNGER, District Judges.

WM. H. MUNGER, District Judge. M. F. Malloy, a single man, entered as a homestead under the laws of the United States, and resided thereon, 160 acres of land, the subject of this controversy. He made final proof some time during the year 1908. The exact date is not disclosed. He continued to reside upon said land subsequent to making his final proof, and during the summer of 1908, for three months. He had a house upon the land, the exact character of which is not disclosed: but the referee, in the summary of the evidence, states that it was better than the average homesteader's house and reasonably well furnished. Upon leaving the premises, three months after final proof, he went to Williston. N. D., where he remained for some time, engaged apparently in a debauch or spree, resulting in his being required to enter a hospital at Fargo, where he remained until June. 1909, when he married. In leaving his place, he left, not only his furniture therein, but some of the furniture which his subsequent wife owned, and which she had used upon a homestead upon which she made final proof, and thereafter transferred to Mr. Malloy's house before he made his final proof. Upon Malloy's marriage in June, being broken in health, and it being too late in the season to cultivate a crop upon his land, he obtained employment as an accountant at

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Minot, N. D., a town about 100 miles from the land, and leased a house until April 1, 1910, in which he and his wife resided. At the time of renting the house in question he stated to the landlord of whom he rented that he should want the place only until about spring, when he intended to move out on his farm. The testimony of other residents of Minot showed that, during casual conversations while visiting at Malloy's home in Minot, he and his wife spoke of their purpose and intention of moving upon his homestead in the spring. An attachment, however, had been levied upon the land before these statements were made. On the 1st day of February, 1910, petitioner was adjudged a bankrupt, and claimed the land in question exempt as a homestead. He filed his petition with the referee for an order requiring the trustee to set apart said land as a homestead. Upon the hearing the referee made the following findings of fact:

"(1) That Mr. Malloy, while a single man, in good faith resided upon the land in question as a home for three months during the summer of 1908, after he had made proof thereon.

"(2) That he has never abandoned such land as a home, or had any permanent home elsewhere.

"(3) That since the end of the three months after proof Mr. Malloy has never actually lived upon such land, or done any overt act indicating an intention so to do.

"(4) That since their marriage neither Mr. Malloy nor his wife have ever actually resided upon such land, nor done any overt act indicating their intention so to do.

"(5) That since the marriage neither Mr. Malloy nor his wife have done any overt act indicating an intention to abandon such home.

"(6) That it has at all times since the marriage been the bona fide intention of Mr. Malloy and his wife to make such land their permanent home, and to return thereto and actually reside thereon as soon as circumstances rendered it feasible."

The referee also made an order that the trustee forthwith set apart to petitioner as exempt the homestead claimed by him. From this order of the referee the trustee filed his petition for its review, and upon hearing the District Court decided that, under the facts, the land in question was not a homestead under the laws of the state of North Dakota, and reversed the order of the referee. Petitioner brings the case to this court.

Section 5049, Revised Code of North Dakota 1905, is as follows:

"The homestead of every head of a family residing in this state, not exceeding in value five thousand dollars, and if within a town plat not exceeding two acres in extent, and if not within a town plat not exceeding in the aggregate more than one hundred and sixty acres, and consisting of a dwelling house in which the homestead claimant resides, and all its appurtenances, and the land on which the same is situated, shall be exempt from judgment lien and from execution or forced sale, except as provided in this chapter."

The principal contention in this case upon the part of the trustee is that the land never became impressed with the character of a statutory homestead, for the reason that it never had been actually occupied by petitioner or his wife subsequent to their marriage, that subsequent to the marriage they had done no act of a physical character which indicated an intent to reside thereon in the immediate or near future, and such was the holding of the learned district judge.

While the summary of the evidence certified by the referee is very meager, we think it sufficient to sustain the findings of fact made by him. From those findings we are advised that the land in question was the home of petitioner, occupied by him as such during the summer of 1908 for at least three months subsequent to his making final proof in the United States land office; that petitioner never abandoned such land as a home, or had any permanent home elsewhere. While it is true that the land in question did not have the character of a statutory homestead while petitioner was a single man and not the head of a family, yet upon his marriage petitioner became the head of a family and entitled to a homestead exemption under the statute of the state. The Supreme Court of North Dakota, in the recent case of Dieter v. Fraine, 128 N. W. 684–686, say:

"It is settled beyond all cavil by previous holdings of this court that the constitutional and statutory provisions of homestead right are wholesome and salutary regulations in furtherance of a wise, generous, and humane public policy, encouraging the establishment and maintenance of homes; that statutes providing for homestead exemptions are remedial in character, and should be liberally construed, with a view of carrying into effect the obvious purpose of their enactment; and that the object sought by the adoption of this constitutional provision and the enactment of statutes in furtherance thereof 'was to protect and preserve the home, not for the benefit of the head of the family, but for the benefit of the family as a whole. * * * It was the protection of the family which was the purpose in view, and, this being true, it is the duty of the courts in construing said provisions, to give effect to such plain intent.'"

While occupancy is essential to create a homestead right, yet, considering the purpose and policy for which the exemption laws are enacted, it is now accepted law that such occupancy may be constructive, as well as actual. Davis v. Kelly, 62 Neb. 642, 87 N. W. 347; Cameron v. Gebhard, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832; Kingman v. O'Callaghan, 4 S. D. 628, 57 N. W. 912.

It is held that the purchase of vacant, unimproved land, for the purpose of occupying it as a home, followed by acts of improvement, indicating such intent, and subsequent actual occupancy, impresses the homestead character upon such premises from the time of the purchase.

Such being the law, and having in mind the "generous and humane public policy" that caused the enactment of the homestead exemption law, we are of the opinion that it was not necessary for both or even that one of the parties should, after their marriage, actually go upon the land to impress it with the character of a homestead. It being at that time his home, he being then the head of a family, it was his homestead, exempt from execution or attachment, and could not thereafter be conveyed or incumbered by him alone.

The case of Brookken v. Bauman, 10 N. D. 453, 88 N. W. 84, is cited and much relied upon by the trustee. Reading the decision of that case in the light of the facts there before the court, we find nothing in conflict with our views herein expressed.

The land being impressed with the homestead character, we think the referee was correct in his finding that it had not been abandoned. The fact that petitioner's wife, before the marriage, removed some of

her furniture to his place, is strong evidence indicating that they contemplated future marriage and residence upon the place. His going to Williston, leaving his furniture and her's upon the premises, as aforesaid, does not indicate any intent to abandon the place as a home. His illness, requiring him to enter a hospital, was sufficient excuse and justification for his remaining away during that time, and did not indicate an intention on his part to abandon the place as a home. His recovery and marriage in June following, after the seeding period had passed, was, we think, a sufficient justification for himself and wife to remain away from the premises until the following spring, and it was commendable for him to seek and obtain employment for the purpose of earning a livelihood during such absence. In this regard the referee says:

"That since the marriage neither Mr. Malloy nor his wife have done any overt act indicating an intention to abandon such home.

"That it has at all times since the marriage been the bona fide intention of Mr. Malloy and his wife to make such land their permanent home, and to return thereto and actually reside thereon as soon as circumstances rendered it feasible."

While it is true that the establishment of a homestead may not be shown by mere intent alone, unaccompanied by acts indicating such intent, yet, where the homestead character is once established, mere absence therefrom does not indicate abandonment, unless such is shown to be the intent of the parties. We do not think that the absence of petitioner and his family from the land, under the circumstances disclosed, indicates an intent to abandon the land as their home.

For these reasons, the decree of the District Court, reversing the order of the referee, was erroneous, and such decree of the District Court is vacated and set aside, and the cause is remanded, with directions to enter an order confirming the order of the referee.